**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| CHRISTOPHER SHAND | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:17-cv-1947 (JCH) |
| v. | : | |
| | : | |
| WARDEN CHAPDELAINE, et al. | : | JANUARY 2, 2018 |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

On November 27, 2017, the plaintiff, Christopher Shand ("Shand"), an inmate

currently housed at MacDougall-Walker Correctional Institution ("MWCI") in Suffield,

Connecticut, filed a complaint pro se pursuant to title 42, section 1983 of the United

States Code against Warden Chapdelaine, Deputy Warden Hines, Deputy Warden

Guadarrama, Captain Rivera, Correction Officer Mancini, Correction Officer Raines, and

four other unidentified correction officers[1] at MWCI in their individual capacities for

monetary relief.  Complaint (Doc. No. 1).  On November 30, 2017, this Court granted

Shand's Motion to Proceed in forma pauperis (Doc. No. 2).  See Order (Doc. No. 6).

For the following reasons, his Complaint is dismissed in part.

## I.    STANDARD OF REVIEW

Pursuant to title 28, section 1915A of the United States Code, this court must

review prisoner civil complaints and dismiss any portion of the complaint that is frivolous

or malicious, that fails to state a claim upon which relief may be granted, or that seeks

---

[1] The Court's docket report originally listed fourteen John Doe defendants.  This was a clerical
error, as the Complaint clearly lists four John Doe defendants.  The Clerk has since corrected that error.

monetary relief from a defendant who is immune from such relief.  See 28 U.S.C.

§ 1915A.  Although detailed allegations are not required, the complaint must include

sufficient facts to afford the defendant fair notice of the claims and the grounds upon

which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550

U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic, 550 U.S. at 570.  Nevertheless, it is

well-established that "[p]ro se complaints 'must be construed liberally and interpreted to

raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399,

403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d

Cir. 2006)).

## II.    FACTS[2]

On January 25, 2015, Captain Rivera assembled a "cell extraction team" after

Shand's cellmate refused to take down a sheet covering the cell window.  Compl. at ¶

18.  Shand had nothing to do with his cellmate's decision to cover the window.  Id. at ¶

24.  The "cell extraction team" included Rivera and correction officers Mancini, Raines,

and John Does 1–4.  Id. at ¶ 19.  Upon opening the cell, the team members immediately

attacked Shand.  Id.  Raines and Mancini punched Shand several times in the head,

causing his left ear drum to burst and permanently damaging his hearing.  Id. at ¶¶ 19–

---

[2] For the purposes of an Initial Review Order, the court accepts all factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  See Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).

20.  John Does 2–4 also participated in beating Shand.  Id. at ¶ 21.  The officers yelled at Shand to "stop resisting!," despite the fact that Shand was not resisting, but was rather lying prone on the floor of the cell.  Id. at ¶¶ 22–23.

While the other team members were beating Shand, Rivera sprayed him with a chemical agent causing Shand to experience pain in his eyes and lungs and difficulty breathing.  Compl. ¶ 10.  John Doe 1 stood by and permitted Rivera to spray Shand even though both Doe 1 and Rivera knew that Shand suffered from asthma.  Id. at ¶¶ 11–12.  After using the pepper spray, Rivera ordered that Shand be placed in in-cell body restraints—including handcuffs, leg irons, and a tether chain connecting his hands to his legs—for three days.  Id. at ¶¶ 14–16.  All members of the "extraction team" denied Shand any medical care for his damaged ear after he was beaten.  Id. at ¶ 25.

## III.  ANALYSIS

Shand is suing Rivera, Raines, Mancini, and John Does 1–4 for using excessive force, placing him in in-cell restraints, and denying him medical care, in violation of his Fifth, Eighth, and Fourteenth Amendment rights.  Compl. at ¶¶ 30–34, 39–42, 46–47.  He is also raising state law claims of assault and battery against those defendants.  Id. at ¶¶ 36-38.[3]  Shand is suing Chapdelaine, Hines, and Guadarrama for failing to train and failing to supervise correctional officers at MacDougall-Walker Correctional Institution, based on the actions of Rivera, Raines, Mancini, and John Does 1–4.  Id. at ¶¶ 43–45.

---

[3] In the introduction to his Complaint, Shand also makes reference to a state law claim of intentional infliction of emotional distress.  See Compl. at ¶ 1.  However, none of the numbered counts in the Complaint raise intentional infliction of emotional distress.  The court therefore concludes that this reference was made in error.

A.    Fifth Amendment Claims

The Fifth Amendment applies to the federal government, not to the states.  See

Dusenbery v. United States, 534 U.S. 161, 167 (2002) (Fifth Amendment due process

applies to federal government actors whereas Fourteenth Amendment due process

applies to state actors); Ambrose v. City of New York, 623 F. Supp.2d 454, 466–67

(S.D.N.Y. 2009) (due process claim against city properly brought under Fourteenth

Amendment, not Fifth Amendment).  Shand has not raised any claim against a federal

government actor.  Therefore, his Fifth Amendment claims are dismissed.

B.    Eighth Amendment Claims Against Rivera, Raines, Mancini, and Does 1-4

1.    Excessive Force

To establish a claim of excessive force under the Eighth Amendment, the

prisoner must satisfy a subjective and objective component.  See Sims v. Artuz, 230

F.3d 14, 20–21 (2d Cir. 2000).

The subjective component of the excessive force standard requires a showing

that an officer's use of excessive force was "carried out 'maliciously and sadistically'

rather than as part of 'a good faith effort to maintain or restore discipline.'"  Wilkins v.

Gaddy, 559 U.S. 34, 40 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

The objective component focuses on the harm done in light of contemporary standards

of decency, but the amount of harm that must be shown depends on the nature of the

claim.  See Sims, 230 F.3d at 21; Banks v. Cty. of Westchester, 168 F. Supp.3d 682,

688 (S.D.N.Y. 2016).  Some degree of injury is ordinarily required.  See Banks, 168 F.

Supp. 3d at 688.  However, a prisoner does not have to show that he sustained a

4

significant injury in order to prevail on an excessive force claim. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (quoting Hudson, 503 US. at 4). On the other hand, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Id. at 37 (quoting Hudson, 503 U.S. at 9); see also Sims, 230 F.3d at 22 (not every push or shove violates prisoner's constitutional rights).

In sum, a prisoner sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically." Sims, 230 F.3d at 22.

Shand claims that Rivera, Raines, Mancini, and Does 1–4 violated his Eighth Amendment protection against cruel and unusual punishment by using excessive force following his cellmate's refusal to remove the window covering. Compl. ¶¶ 30–35. He alleges that these defendants physically assaulted him in his cell, damaging his eardrum, and further sprayed him with a chemical agent without justification. Id. at ¶¶ 10–13, 18–21. These allegations state a plausible claim of excessive force under the Eighth Amendment.

2. Deliberate Indifference to Medical Needs

Shand also claims that Rivera, Raines, Mancini, and Does 1-4 acted with deliberate indifference to his serious medical needs by denying him any form of medical care after the alleged assault. Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it. Harrison v. Barkley, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, Shand must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 105 (1976)). Objectively, the alleged deprivation must be "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that Shand would suffer serious harm as a result of their conduct. See Salahuddin v. Goord, 467 F.3d 263, 280–81 (2d Cir. 2006).

Shand alleges that his eardrum was damaged, causing permanent damages to his hearing in one ear, and that the chemical agent caused acute pain and difficulty breathing because he has asthma. Compl. at ¶¶ 10–12, 20, 25–27. He further alleges that Rivera, Raines, Mancini, and Does 1–4 knew or should have known of his asthma. Although borderline conclusory, Shand's allegation that Rivera, Raines, Mancini, and Does 1–4 denied him medical care following the assault is sufficient at this early stage to state a claim for deliberate indifference to medical needs. See White v. Clark, 12 Civ. 986 (NAM/RFT), 2012 WL 5877160, *7 (N.D.N.Y. Nov. 20, 2012) (permitting medical indifference claim to proceed based on allegation that defendants denied him medical care following assault by correction officers). Therefore, Shand's Eighth Amendment

claims for deliberate indifference to serious medical needs will proceed against Rivera, Raines, Mancini, and Does 1–4.

C.    Fourteenth Amendment Claims

To the extent Shand is suing Rivera, Raines, Mancini, and Does 1–4 for violating his right to due process under the Fourteenth Amendment based on the same allegations in support of his Eighth Amendment claims, the Fourteenth Amendment claim is dismissed as duplicative.  See Graham v. Connor, 490 U.S. 386, 395 (1989) (generalized notion of substantive due process under Fourteenth Amendment not applicable where other amendment provides explicit textual source of constitutional protection against alleged government conduct).  He also claims, however, that those same defendants violated his Fourteenth Amendment right to procedural due process by placing him in body restraints for three days following the assault.

To demonstrate a procedural due process violation, Shand must show that the defendants encroached upon a protected liberty interest.  In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held that due process requires procedural protections before a prisoner could be deprived of a protected liberty interest.  In finding a protected liberty interest in Wolff, the Court noted that the right at issue, good time credit, was statutorily provided by the State of Nebraska.  In Sandin v. Conner, 515 U.S. 472, 484–85 (1995), the Court rejected the plaintiff's argument that prison discipline "encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation [creating a liberty interest]."  Thus, a plaintiff "has a protected liberty interest only (1) if the state has created a liberty interest in a statute or regulation

7

and (2) deprivation of that interest caused plaintiff to suffer an 'atypical and significant hardship in relation to the ordinary incidents of prison life.'" <u>Cruz v. Prior</u>, No. 3:16-cv-1303 (VAB), 2016 WL 5348571, at *2 (D. Conn. Sept. 23, 2016).

Here, Shand has not directed the court to any State of Connecticut statute or regulation that creates a protected liberty interest in being free from in-cell restraints, and the court knows of none. Connecticut Department of Corrections Directive 6.5 ("Directive 6.5") governs in-cell restraints, and it imposes various guidelines for use of in-cell restraints. <u>See</u> Directive 6.5 at ¶ 8(B). For example, use of in-cell restraints must be approved by a shift commander, circumstances leading to use of in-cell restraints must be documented. <u>Id.</u> Directive 6.5 further provides that in-cell restraints must be applied in such a way that the prisoner can still stand erect, and prisoners on in-cell restraints must be observed at least every fifteen minutes. <u>Id.</u> Although Directive 6.5 regulates the use of in-cell restraints, there is no indication that Directive 6.5 was intended to create a protected liberty interest: it contains no language suggesting that it creates enforceable rights for prisoners. <u>See</u> <u>Sandin</u>, 515 U.S. at 481–82 (overturning Supreme Court precedent that mandatory language in prison regulations created enforceable rights).

Although the court does not doubt that in-cell restraints—consisting of handcuffs, leg irons, and a tether connecting the leg irons to the handcuffs—impose restrictions, absent an explicit statement by the State of Connecticut that being free from such restraints is a protected liberty interest, the court cannot presume that such a liberty interest exists. In <u>Sandin</u>, for example, the Supreme Court held that thirty days in

punitive segregation did not constitute "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. In light of the high bar established by the Supreme Court, this court concludes that Shand's three days in in-cell restraints does not violate a protected liberty interest, absent any statement to the contrary by the State of Connecticut. See also Alston v. Delpeschio, 15 Civ. 1672 (CSH), 2016 WL 3211805, *5 (D. Conn. Jun. 9, 2016) (prisoner's placement in in-cell restraints for more than eighteen hours not sufficient to meet Sandin threshold); Alston v. Daniels, 2015 WL 7257896, at *9 (D. Conn. Nov. 17, 2015) (prisoner's placement in in-cell restraints for approximately a day not an "atypical and significant hardship" pursuant to Sandin). Therefore, Shand's Fourteenth Amendment claim is dismissed.

D. State Law Claims

Shand is also pursuing state law claims of assault and battery against Rivera, Raines, Mancini, and Does 1–4 for their assaultive behavior during the cell extraction. See Compl. at ¶¶ 36–38.

This court can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

Miller v. Lovett, 879 F.2d 1066, 1071 (2d Cir. 1989), overturned on other grounds, Graham, 490 U.S. 386 (1989) (citing United Mine Workers of Am. v. Gibbs, 383 U.S.

715, 725 (1966)).  In this case, the first prong is satisfied by the court's decision to permit Shand's Eighth Amendment claims of excessive force and deliberate indifference to medical needs to go forward.

In Connecticut, "civil assault is defined as 'the intentional causing of imminent apprehension of harmful or offensive contact with another.'"  Germano v. Dzurenda, 09 Civ. 1316 (SRU), 2011 WL 1214435, *22 (D. Conn. Mar. 28, 2011) (quoting Dewitt v. John Hancock Mutual Life Ins. Co., 5 Conn. App. 590, 594 (1985)).  "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  Id. (quoting Alteiri v. Colasso, 168 Conn. 329, 334 n.3 (1975)).

Because the court is permitting Shand's Eighth Amendment excessive force claim to proceed against Rivera, Raines, Mancini, and Does 1–4, and that claim is based on the same set of facts as the assault and battery claims, the court will also permit Shand's state law assault and battery claims to proceed against those same defendants at this time.  See Boudreau v. Smith, 2017 WL 2979682, at *5 (D. Conn. July 12, 2017) (courts "should exercise supplemental jurisdiction . . . when federal constitutional claim of excessive force and assault claim are so tightly interwoven that decision on former will collaterally estop litigation of latter").

E.    Supervisor Liability

Shand is suing Chapdelaine, Hines, and Guadarrama for the actions of their

subordinates: Rivera, Raines, Mancini, and Does 1–4. <u>See</u> Compl. at ¶¶ 43–45. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); <u>see also</u> <u>Johnson v. Glick</u>, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of <u>respondeat</u> <u>superior</u> does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. <u>Wright</u>, 21 F.3d at 501; <u>Hernandez v. Keane</u>, 341 F.3d 137, 145 (2d Cir. 2003).

Shand alleges that Chapdelaine, Hines, and Guadaramma "creat[ed] a policy and custom . . . under which [he] was subjected to chemical agents and in-cell restraints for the actions of his cellmate . . . as well as beating him for the actions of his cellmate . . . and by failing to adequately supervise and train subordinates who committed the violations described herein." Compl. at ¶ 44. He does not, however, allege any facts suggesting that such a policy or custom exists or any facts to support his conclusion that Rivera, Raines, Mancini, and Does 1–4 were inadequately trained. Therefore,

Shand's conclusory claim of supervisor liability against Chapdelaine, Hines, and Guadarrama is dismissed as legally insufficient.

## IV.    ORDERS

(1) All claims against Chapdelaine, Hines, and Guadarrama are dismissed. Shand's Fifth and Fourteenth Amendment claims are dismissed. Shand's Eighth Amendment claims for excessive force and deliberate indifference to medical needs and state law assault and battery claims may proceed against Rivera, Raines, Mancini, and Does 1–4 in their individual capacities for damages.

(2) The Clerk shall verify the current work addresses for Rivera, Raines, and Mancini with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If a defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Because Shand has not identified John Does 1–4 by name, the Clerk is not able to serve a copy of the Complaint on those defendants in their individual capacities. Shand must, within **ninety (90) days** of the date of this Order, conduct discovery and file a notice indicating the first and last name of those four defendants. If Shand files the notice, the court will direct the Clerk to effect service of the Complaint on those defendants in their individual capacities. If Shand fails to identify those

12

defendants within the time specified, his claim against them will be dismissed pursuant to Fed. R. Civ. P. 4(m).

(4) Rivera, Raines, Mancini, and Does 1–4 (if identified) shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

**SO ORDERED.**

Dated this 2nd day of January, 2018, at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge